UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
G.I. HOME DEVELOPING CORP.,                          **MEMORANDUM**
                                                     **AND ORDER**
                              Plaintiff,             07-CV-4115 (DRH) (ARL)

        -v.-


JOHN WEIS, Chief Zoning Inspector of the
Building Division of the Town of Brookhaven,
ARTHUR GERHAUSER, Chief Building Inspector,
BUILDING DEPARTMENT OF THE TOWN OF
BROOKHAVEN, ZONING BOARD OF APPEALS
OF THE TOWN OF BROOKHAVEN, BRENDA A.
PRUSINOWSKI, Deputy Commissioner of the
Department of Planning, Environment and Land
Management of the Town of Brookhaven, DAVID
WOODS, Commissioner of the Department of
Planning, Environment and Land Management of
the Town of Brookhaven, THE DEPARTMENT OF
PLANNING, ENVIRONMENT & LAND
MANAGEMENT OF THE TOWN OF
BROOKHAVEN, and
THE TOWN OF BROOKHAVEN,

                              Defendants.
----------------------------------------------------------------X

**Appearances:**

**For the Plaintiff:**
**William D. Wexler, Esq.**
**Attorney at Law**
816 Deer Park Avenue
North Babylon, New York 11703

**For the Defendants:**
**Devitt Spellman Barrett, LLP**
50 Route 111
Smithtown, New York 11787
By:     David H. Arntsen, Esq.
        Jeltje DeJong, Esq.
        Kelly E. Wright, Esq.

**HURLEY, District Judge:**

Plaintiff G.I. Home Developing Corp. commenced this civil rights action asserting that defendants' alleged revocation of a Certificate of Zoning Compliance deprived it of its constitutionally protected property interest in violation of its Fourteenth Amendment due process rights. Defendants John Weis, Chief Zoning Inspector of the Building Division of the Town of Brookhaven, Arthur Gerhauser, Chief Building Inspector, Building Department of the Town of Brookhaven, Zoning Board of Appeals of the Town of Brookhaven, Brenda A. Prusinowski, Deputy Commissioner of the Department of Planning, Environment and Land Management of the Town of Brookhaven, David Woods, Commissioner of the Department of Planning, Environment and Land Management of the Town of Brookhaven, The Department of Planning, Environment & Land Management of the Town of Brookhaven, and the Town of Brookhaven (collectively, "defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, defendants' motion is granted and this case is dismissed in its entirety.

## BACKGROUND

The following facts are taken from the pleadings, the parties' Local Civil Rule 56.1 Statements, and the papers submitted by the parties in connection with the motion.

### The Property and the CZC

Plaintiff is a corporation that owns a parcel of real property at 16 Herkimer Street, Mastic, New York (the "Property"), which is located within the Town of Brookhaven (the "Town").[1]

---

[1] In 2004, Plaintiff obtained title to real property that was listed as "14 Herkimer Street" but which in actuality was "16 Herkimer Street." On August 27, 2007, the Town

Plaintiff purchased the Property on March 11, 2004. Prior to the purchase, plaintiff's predecessors in ownership applied for, and were granted, a Certificate of Zoning Compliance (the "CZC"). The CZC, which is dated November 15, 1982, was issued by the Town Building Department and states:

> One story block building appx. 36.1 x 26.7 irreg. as per Zoning Bd. of Appeals grant 11/3/82, Case #14 located at W side Herkimer Street, Distance Corner S of Classon Avenue Village Mastic, State of New York, Map Mastic Park, Section 4 Lot 3558-3562 is presumed to conform substantially with Zoning Ordinances in effect at the time of construction for such stated use
> . . .
> Signed (illegible) Building Inspector.

(Decl. of David H. Arntsen, Esq., dated Nov. 22, 2010 ("Arntsen Decl."), Ex. D.) By letter dated July 19, 1983, the Town amended the CZC in order to correct a clerical error. (*Id.*, Ex. H.) The amended language of the CZC reads as follows: "One story block bldg appx 36.1 x 26.7 irreg. *used as public garage* as per ZBA 11-3-82, Case #14." (*Id.* (emphasis added)) The CZC stated that it would become "null and void if [the] building, structure or use is altered or used for any purpose other than which it is certified." (*Id.*, Ex. D.)

***Zoning of the Property***

At all relevant times, the Property was "dual zoned," with one portion zoned as A-1 residential and the other portion zoned as J-2 commercial. The one-story building that is described in the CZC (the "Building") is located on the J-2 portion of the Property; no structure has ever existed on the A-1 portion. At the time plaintiff purchased the Property, the Building

corrected its records to reflect the proper address for the Property as "16 Herkimer Street." (Mem. & Order of Defs.' Mot. to Dismiss, dated March 31, 2009 ("March 31 Mem. & Order") at 2 n.1.)

3

was used as a public garage. The use of a building as a public garage is generally not permitted in a J-2 zoned area; the CZC, therefore, permits the operation of a public garage in the Building as a nonconforming use of the Property.

### *Use of the Property and Building*

Plaintiff is in the business of home building and improvement and, as of August 2009, operated its business office out of the Building. As early as 2007, and continuing as late as August 2009, the Building also housed "Mastic Discount Tires," d/b/a "Iacobelli's," which was a business dedicated to tire sales. At some point, an entity by the name of "J&J Auto" also operated at the Building as a car dealership. The parties agree that a car dealership is not a permitted use in a J-2 zoned area.

Overall, there is no dispute that several businesses operated out of the Building at various times both before and after plaintiff acquired title to the Property, and that these businesses engaged in uses that were not permitted in a J-2 zoned area, including: tire and rim sales, auto dealerships and detailing, and "sales and towing for motor clubs." (Defs.' 56.1 ¶ 14.)

### *Plaintiff's Land Division Application*

On October 29, 2004, plaintiff, through its agent, Michelle Janlewicz of AM PM Property Services, Inc., filed a Land Division Application with respect to the Property with the Town Planning Division. (Arntsen Decl., Ex. I.) The Land Division Application sought a "minor subdivision" of the Property into two separate lots and to construct a new two-story dwelling. (*Id.*) Plaintiff's intention was to use the new two-story structure as a residential home and to keep the public garage operating in the Building on the J-2 zoned portion of the Property. (*See* Iacobelli Dep. at 40-41.) The Land Division Application reflects that lot area variances would be

4

required from the Town Board of Zoning Appeals ("BZA").  (*See* Arntsen Decl., Ex. I.)

On January 18, 2007, plaintiff, through its agent Janlewicz, filed Applications for Building and Zoning Permits with respect to its desired development of both the A-1 zoned portion and the J-2 zoned portion of the Property.  (*See id.*, Ex. J.)  The application for the A-1 residential zoned area was assigned # 781468 and the application for the J-2 commercial zoned portion assigned # 781469.  (*Id.*)  The latter application for the J-2 zoned portion of the Property stated that the use and size of the proposed work would be: "Existing one story block bldg appx 36.1 x 26.7 irreg. used as public garage."  (*Id.*)  Both of the applications were denied on April 4, 2007 based upon the need for lot variances as well as front, rear, and side yard setbacks.  (*See id.*)

Plaintiff subsequently filed a new Applications for Building and Zoning Permits, dated May 21, 2007.  (*Id.*, Ex. K.)  The application for the A-1 residential zoned portion was assigned # 782130, and the application for the J-2 commercial zoned portion was assigned # 782131.  (*Id.*)  The new application for the J-2 zoned portion of the Property listed the use and size of the proposed work as: "Proposed two story building (commercial) 38' x 65'."  (*Id.*)  These applications were also denied based upon the need for front and rear set back variances, as well as a property area variance.  Subsequently, although exactly when is unclear, plaintiff's agent filed applications with the BZA for the variances needed in case numbers 781469, 781468, and 782130.[2]  (*Id.*, Ex. L.)

---

[2]    Plaintiff does not appear to have filed an application with the BZA for the variances needed in case number 782131, which described the use and size of the proposed work for the J-2 zoned portion of the Property as: "Proposed two story building (commercial) 38' x 65'."  (Arntsen Decl., Ex. K.)  Defendants opine that "in light of the explicit terms of the [CZC], a grant of a variance by the BZA permitting the change in structure would likely have resulted in a loss of the nonconforming use . . . ."  (Defs.' Mem. at 8.)  Plaintiff does not address this issue and, ultimately, the Court finds it irrelevant to the analysis.

*The Weis Document*

On June 27, 2007, John H. Weis, the Chief Zoning Inspector for the Town, produced and gave a document to plaintiff's agent (the "Weis Document"). (*See id.*, Ex. Q.) Defendants describe the Weis Document as a memorandum, while plaintiff describes it as a letter. (*See* Defs.' Mem. at 9-11; Pl.'s Opp'n at 3-4.) The Weis Document appears to be on official Town letterhead and, at the bottom, lists Joseph F. Sauerwein as Commission of the Department of Building and Fire Prevention, and Arthur Gerhauser as Chief Building Inspector for the Division of Building. (*Id.*) The Weis Document states:

> TO: GI Home Developing Corp.
>
> RE: Certificate of Zoning Compliance #570, 14 Herkimer St.
> Mastic, N.Y.
>
> The above referenced Certificate of Zoning Compliance for the "Usage as a Public Garage" has lost its nonconforming use and can no longer be considered one. This determination was made [following] several inspection[s] of the site for various violations and at no time was the site being used as a Public Garage.
>
> As owner of the property you can make an application to the Board of Zoning Appeals and they can make a determination as to whether or not this usage can be reinstated.

(*Id.*) The Weis Document is signed by John H. Weis, Zoning Inspector. (*Id.*)

The record contains different versions of the events leading up to June 2007. Frank Iacobelli, the President of G.I. Home Developing Corporation, testified during his deposition that in April 2007 he needed a letter from the Town to provide to the New York State Department of Motor Vehicles ("DMV"). (Iacobelli Dep. at 42.) Iacobelli wanted to open a registered repair shop on the Property and in order to do so, he needed a letter from the Town stating that the

Property had appropriate zoning.  (*Id.* at 45-46.)  According to Iacobelli, Weis informed him that "I'm not giving you a letter.  I'm abandoning that use."  (*Id.* at 43.)[3]

Weis testified as to his own version of the circumstances that occurred prior to his drafting the Weis Document.  According to Weis, his first involvement with the Property occurred at least one month earlier.  (Weis Dep. at 13.)  David Barns, an employee of the Town's Planning Department, informed Weis that "they had an application in their department" regarding the Property and the Planning Department "felt they lost [their] nonconforming use for their public garage . . . ."  (*Id.* at 12-14.)  Weis consulted with Rich Palazzoto, a co-employee of Weis's from the Building Department, because Weis knew that Palazzoto had "handled the complaint on Herkimer [Street]."  (*Id.* at 15-16.)  Barns and Palazzoto compared their files and determined that the Property had lost its nonconforming use, although they never informed Weis how or why this was so.  (*Id.* at 16.)

Weis further testified that at some later, undefined date, Janlewicz spoke to Weis and informed him that she was going before the BZA with plaintiff's application to subdivide the Property.  (*Id.* at 22.)  Weis told her that pursuant to Town Code § 85-372, the Property would automatically lose the nonconforming use if it was subdivided.  (*Id.* at 21-22.)  Weis testified as follows:

> I explained I would give her a memo to bring down to the [BZA], so as part of her application she can present this to the board and have the board state as part of the record that they didn't lose their

---

[3]    Frankly, the meaning of the latter part of this statement is not entirely clear to the Court.  In its Local Rule 56.1 Statement, plaintiff inserts a phrase into the quotation of Iacobelli's testimony as follows: "When plaintiff sought the letter at Brookhaven Town Hall, with no prior notice from the Town, plaintiff was advised by defendant John Weis that he was 'abandoning [the garage] use.'" (Pl.'s 56.1 ¶ 37 (alteration in the original).)

> nonconforming use. If the board approved the property split, they
> wouldn't lose their nonconforming part.

(*Id.* at 22.) Weis asserted that he gave Janlewicz the Weis Document in an attempt to

"circumvent the law and have [her] client not lose his rights." (*Id.*) When asked during his

deposition why the Weis Document mentioned the existence of multiple code violations, Weis

testified that he knew that Palazzoto's file contained notations of violations and "since [the]

[P]lanning [Department] had already made a determination [that the Property had lost its

nonconforming use,] and this application would go back to [P]lanning eventually, I wanted it to

prevent a problem. By saying you already lost [the nonconforming use], it looks like its

reinstatement of the rights and thereby [P]lanning is wiped out." (*Id.* at 23.)

Weis testified that, in the course of his 19-year career, he had never before prepared

anything similar to the Weis Document. (*Id.* at 19, 30.) Weis also testified that, in his capacity

as Zoning Inspector, he did not have the authority to revoke a nonconforming use. (*Id.* at 20.)

Moreover, Weis was aware that he lacked this authority at the time he prepared the Weis

Document. (*Id.* at 20-21.)

***The Public Hearing***

At some point, although exactly when is unclear from the record, the BZA issued a

"Notice of Proposed Application for Variance – Special Permit." (Arntsen Decl., Ex. M.) The

notice stated that Iacobelli had filed a petition requesting division of the Property into two plots,

which would require the issuance of numerous variances. (*Id.*) The notice stated that a public

hearing was scheduled to take place on July 25, 2007. (*Id.*) By letter dated July 3, 2007,

Janlewicz requested that the BZA postpone the hearing "indefinitely" "due to a legal matter."

(*Id.*, Ex. N.) On July 27, 2007, the BZA issued a notice stating that consideration of the application was "postponed indefinitely." (*Id.*, Ex. S.)

In a letter dated August 22, 2007, Janlewicz requested that the BZA set "a new hearing date" for plaintiff's application. (*Id.*, Ex. O.) Although this letter has been included as part of the record submitted for the Court's review, defendants "do not concede receipt of the letter from Janlewicz." (Defs.' Mem. at 9 n.4.) During her deposition, Janlewicz specifically recalled speaking to "Laurie," the addressee of the August 22, 2007 letter whose title was described as secretary to the BZA, about the letter's contents. (Janlewicz Dep. at 119-120.) She did not, however, have any specific recollection of handing the letter to any member of the BZA staff, or of faxing, mailing, emailing, or otherwise delivering that letter. (*Id.* at 114-120.) Janlewicz testified that she was only "40 percent certain or 50 percent certain that" she delivered the August 22, 2007 letter to the BZA in some fashion. (*Id.* at 119.) Plaintiff's application, to date, has not been returned to the BZA's calendar.

### The Article 78 Proceeding

On August 1, 2007, plaintiff commenced a proceeding pursuant to Article 78 of the New York CPLR in New York Supreme Court, Suffolk County (the "Article 78 Proceeding"). The petition sought, *inter alia*, an injunction preventing the Town from "cancelling" the CZC and a declaration that plaintiff has a "vested right in a pre-existing nonconforming use" of the Property. (*See* Arntsen Decl., Ex. T at 7.) The Article 78 Proceeding was formally discontinued by plaintiff on September 25, 2007. (*See* Arntsen Decl., Ex. U.)

### Subsequent Action

In a letter dated October 2, 2007, Assistant Town Attorney Beth Ann Reilly informed

plaintiff's counsel that, with respect to the Property:

> I have advised both the Board of Zoning Appeals and the Building
> Division that the Certificate of Zoning Compliance for "Usage as a
> Public Garage" is still valid and that John Weis' letter dated June 20,
> 2007 is of no force and effect.

(Arntsen Decl., Ex. V.)  Plaintiff commenced the present action on the same day.

On November 5, 2007, Brian M. Tohill, a Town Investigator, issued four appearance

tickets to plaintiff based upon the following alleged violations of Town Code: (1) the existence

of roof signs, which is prohibited in a J-2 zoned area; (2) the use of the Property by Mastic

Discount Tires for the outdoor display of automobile rims and tires, as well as for tire sale and

repair, without a Certificate of Occupancy for such uses; (3) the lack of site plans for Mastic

Discount Tires' uses of the Property; and (4) the use of the Property by Mastic Discount Tires in

a manner not permitted within a J-2 zoned area.  (*See* Pl.'s Ex. A.)  According to plaintiff, these

violations "remain pending."  (Pl.'s Opp'n at 4.)

### *Procedural History*

In a Memorandum & Order dated March 31, 2009, this Court denied defendants' Rule

12(b)(6) motion to dismiss the Complaint and granted plaintiff's cross-motion to amend the

Complaint.  The Amended Complaint asserts three claims for relief.  First, plaintiff asserts a

claim pursuant to 42 U.S.C. § 1983 asserting that defendants violated plaintiff's Fourteenth

Amendment due process rights "by revoking the [CZC] and nonconforming use of the property

without affording Plaintiff due process of law and the [BZA's] refusal to process Plaintiff's

application."  (Am. Compl. ¶ 42.)  Next, plaintiff seeks attorneys' fees pursuant to 42 U.S.C. §

1988.  (*Id.* ¶¶ 48-51.)  Third, plaintiff seeks declaratory and injunctive relief.  (*Id.* ¶¶ 52-60.)

## DISCUSSION

### I.    Legal Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings,

conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Id.* (citing *Matsushita*, 475 U.S. at 587).

## II. *Section 1983 Claim Based Upon Alleged Violation of Due Process*

### A. *Legal Standard*

A plaintiff may assert a cause of action pursuant to Section 1983 against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . ., subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Municipalities and other local governmental units are considered "persons" subject to suit under Section 1983. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658,

690 (1978).

Because "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred' . . . [t]he first step in [analyzing] any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citation omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In the land use context, Section 1983 "protects against municipal actions that violate a property owner's rights to due process" under the Fourteenth Amendment. *See Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 627 (2004). Here, plaintiff claims that defendants have violated his constitutional right to due process by "unilaterally revoking the non-conforming status and [CZC] . . . without giving any notice to Plaintiff, without giving Plaintiff any opportunity to be heard, without conducting any hearing, and without making any determination based upon credible and substantial evidence." (Am. Compl. ¶ 44.)[4]

"In order to assert a violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (quoting *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194

---

[4]     The Amended Complaint does not make clear whether plaintiff is attempting to allege that defendants committed a separate violation of its constitutional rights by virtue of the BZA's alleged failure to restore its subdivision-related application to the BZA calendar. (*See* Am. Compl. ¶ 42.) Defendants argue in their motion papers that, to the extent the Amended Complaint can be read as asserting such a claim, it cannot survive summary judgment. (*See* Defs.' Mem. at 22.) Plaintiff has not provided any further clarification, but after reviewing the Amended Complaint and plaintiff's legal memorandum, it appears that plaintiff is not attempting to assert any separate constitutional claim based upon the BZA's alleged failure to re-calendar plaintiff's application.

(2d Cir. 1994)) (alteration in the original).

###### B. The Parties' Contentions

Defendants do not appear to contest the sufficiency of the plaintiff's evidence with respect to the first two elements of its due process claim.  Indeed, as this Court has already observed, "[i]t is well-established in New York that 'a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection.'" (Mar. 31 Mem. & Order at 11 (quoting *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003)).  Moreover, save for one passing reference in a footnote of their legal brief (*see* Defs.' Mem. at 15 n.6), defendants do not contest that the Weis Document constituted a deprivation of that vested right.

Instead, defendants focus on the third element and argue that "deprivations of property attributable to *unauthorized* conduct of state officials do not violate the Due Process Clause if state law provides an adequate post-deprivation remedy."  (Defs.' Mem. at 15 (emphasis in the original) (citing *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).)  According to defendants, Weis's creation and transmission of the Weis Document was a "random, unauthorized act[ ]," as opposed to conduct undertaken pursuant to "established state procedures." (*Id.* at 18.)  Defendants contend that in such a circumstance, "the state satisfies Procedural Due Process requirements so long as it provides [a] meaningful post-deprivation remedy," which in this case was an Article 78 proceeding.  (*Id.* at 18 (internal quotation marks omitted).)  Defendants note that although plaintiff initially commenced the Article 78 Proceeding based upon the injury caused by the Weis Document, plaintiff subsequently withdrew its Article 78 petition before it was resolved.  (*Id.* at 21.)  According to

14

defendants, plaintiff's failure to utilize the available post-deprivation remedy forecloses its procedural due process claim.

In opposition, plaintiff contends that the issuance of the Weis Document was not a random, unauthorized act but was, instead, an action that was "fully authorized by, or at the very least [taken] with the full knowledge of other high ranking municipal or governmental agents." (Pl.'s Opp'n at 8.) According to plaintiff, therefore, the rationale of the Supreme Court in *Parratt* and the Second Circuit in *Brady* does not apply, and plaintiff was entitled to some form of pre-deprivation due process. (*See id.*)

Plaintiff further contends that even if Weis's conduct was considered random and unauthorized, such that plaintiff would be required to avail itself of an Article 78 proceeding before it could commence this action, there exist material issues of fact surrounding the circumstances of plaintiff's withdrawal of the Article 78 Proceeding. Specifically, plaintiff asserts that Iacobelli "was told that the ZBA would not calendar his [pending] application until he 'solve[d] the Article 78.'" (*Id.* at 11 (quoting Iacobelli Dep. at 57-69) (first alteration added).) According to plaintiff, "evidence of such coercion lends further support to a claim for [a] violation [of] procedural due process in a land use context." (*Id.* at 12.)

### C.     *Application*

#### 1.     <u>Relevant Legal Framework</u>

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt*, 451 U.S. at 537). "To determine whether a constitutional violation has occurred, it is

15

necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 465 (quoting *Zinerman v. Burch*, 494 U.S. 113, 126 (1990)) (internal alteration and quotation marks omitted).

As the Second Circuit has recognized, "in evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y. ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) and *Parratt*, 451 U.S. at 541)). "When the state conduct in question" – here, the drafting and dissemination of the Weis Document – "is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Id.* (citing *Hudson*, 468 U.S. at 533); *see also Reed v. Medford Fire Dep't, Inc.*, 2011 WL 3555821, at *13 (E.D.N.Y. Aug. 10, 2011). If, on the other hand, "the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell*, 470 F.3d at 465 (citing *HANAC*, 101 F.3d at 880). In that case, "'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *HANAC*, 101 F.3d at 880).

## 2. Weis's Conduct was Random and Unauthorized

The Second Circuit has noted that "[t]he distinction between random and unauthorized conduct and established state procedures[ ] is not clear cut." *Id.* "However, as a general rule, conduct cannot be considered random and unauthorized . . . if: (1) the state delegated to those actors the power and authority to effect the very deprivation complained of . . . and the

concomitant duty to initiate the procedural safeguards set up by state law, or (2) the deprivation resulted from the acts of high-ranking officials who are ultimate decision-makers and have final authority over significant matters." *Reed*, 2011 WL 3555821 at *13 (internal quotation marks and alterations omitted, alterations added).

Here, it is undisputed that Weis did not have the authority to revoke a pre-existing nonconforming use, and his deposition testimony that he had never authored or otherwise issued any similar document is unchallenged. Moreover, the parties do not dispute that approximately four months after the Weis Document was given to plaintiff's agent, Assistant Town Attorney Reilly informed plaintiff's counsel that the Weis Document was "of no force and effect." (Arntsen Decl., Ex. V.) Defendants rely on these facts to argue that Weis's actions in drafting and transmitting the Weis Document were random and unauthorized within the meaning of the case law set forth above.

Plaintiff argues that Weis's conduct was not random and unauthorized, but was, in fact, taken pursuant to established municipal procedures. First, plaintiff emphasizes that Weis was the Town's "'one and only zoning inspector'" (Pl.'s Opp'n at 8 (quoting Weis Dep. at 5).) Plaintiff cites this Court's earlier Memorandum and Opinion, which found that the Weis Document contained "indicia of an official correspondence from the Town . . ., and [therefore] an inference can be made [ ] that Weis had the authority to revoke the [CZC]." (*Id.* quoting Mar. 31 Mem. & Order at 14.) The Court notes, however, that this statement from its prior opinion was made in the context of a determination that plaintiff had adequately pled that the Weis Document constituted a deprivation of plaintiff's property interest – an issue not relevant here. (*See* Mar. 31 Mem. & Order at 15.) While it may be true that Weis was the Town's only zoning inspector,

plaintiff has not pointed to any evidence that Weis was a "high-ranking official[ ] who [was an] ultimate decision-maker[ ] and ha[d] final authority over significant matters." *See Reed*, 2011 WL 3555821 at *13 (internal quotation marks and alterations omitted, alterations added).

Plaintiff also points to record evidence that David Barns, an employee in the Planning Department, told Weis that the Property had lost its nonconforming use. (*See* Pl.'s Opp'n at 9 (citing Wes Dep. at 15-19).) Plaintiff argues that "to the extent the direction [to prepare and send the Weis Document] came from the Planning Department and involved communication between the Planning and Building departments, defendants' argument that 'Weis' actions could not have been foreseen by the Town' is fatally undermined by the record in this case." (*Id.*) The flaw in this argument, however, is that plaintiff has cited no evidence that anyone in the Planning Department directed Weis to prepare the Weis Document or that any communication between Weis and Barnes actually resulted in the preparation of the Weis Document.

Finally, plaintiff argues that "the Weis [Document] most assuredly did have legal effect to the extent [that] *defendants relied on it when they initiated criminal proceedings against plaintiff based on the alleged lack of a certificate of occupancy*." (*Id.* (emphasis in the original)). After a thorough review of Tohill's deposition testimony, however, the Court concludes that plaintiff has failed to proffer any evidence that Tohill relied on the Weis Document when he issued any of the criminal violations, including the violation based upon a lack of a certificate of occupancy for the use of the Property by Mastic Discount Tires.

Tohill testified that he commenced an investigation of the Property[5] and, on or about

---

[5] Tohill could not recall whether the investigation was commenced on the basis of a complaint. (Tohill Dep. at 10.)

September 19, 2007, he observed that Mastic Discount Tires was improperly using the Building and portion of the Property located in a J-2 zone for the outdoor display of automobile tire rims and for the sale and repair of automobile tires. (Tohill Dep. at 10, 26, 27.) Tohill further testified that on September 26, 2007, after requesting the Property's records from the Building Department, he received information that there was no certificate of occupancy or site plan approval for the observed uses of the Building and Property and that there was no information regarding a permit for a roof sign. (*Id.* at 30, 31.) Tohill could not specifically remember the nature of the information that led him to conclude there was no certificate of occupancy for the use of the Property by Mastic Discount Tires, although he speculated that he might have drawn such a conclusion based simply upon the absence of such documentation in the file. (*Id.* at 31.) Tohill definitively testified, however, that he never saw or heard about the Weis Document until the day of his deposition. (*Id.* at 33, 45-46.) Moreover, Tohill never spoke to Weis about the Property. (*Id.* at 37, 45-46.)

Plaintiff points to Tohill's hypothetical statement that if he had seen the CZC for the Property in the file, he would not have issued a ticket based upon a lack of a certificate of occupancy.[6] (Pl.'s Opp'n at 10 (citing Tohill Dep. at 34-35).)[7] At most, however, this testimony shows that Tohill's issuance of one of the appearance tickets was caused by the absence of the CZC from the records provided to him by the Building Department. Plaintiff has proffered

---

[6] Apparently, this is because when there is a CZC on file for a particular property, that necessarily means that the Town does not have a certificate of occupancy on file for that property, nor can one be produced. (*See* Weis Dep. at 11.)

[7] Defendants, in turn, point to Tohill's testimony that even if he had seen the CZC for the Property, he still would have issued the appearance ticket based upon a lack of site plan approval. (*See* Tohill Dep. at 39-40.)

absolutely no evidence that Tohill relied upon the Weis Document when he issued the appearance tickets – indeed, the unrebutted evidence demonstrates that Tohill had never even seen that document.[8]  Moreover, plaintiff has failed to point to any evidence that the absence of the CZC in the documents provided to Tohill by the Building Department was related in any way to the existence of the Weis Document.

Based on the foregoing, the Court finds that Weis's preparation and dissemination of the Weis Document was a random and unauthorized act, and plaintiff has failed to create any material issue of fact that would permit a jury to find otherwise.  Accordingly, any deprivation of plaintiff's property interests caused by the Weis Document could not violate plaintiff's due process rights so long as an adequate post-deprivation remedy was available to address this violation.  *See, e.g., Reed*, 2011 WL 3555821 at *13.

### 3. Plaintiff has Failed to Demonstrate the Existence of a Material Issue of Fact as to Whether the Article 78 Proceeding was an Adequate Post-Deprivation Remedy

The parties do not appear to dispute that an Article 78 proceeding would provide an adequate post-deprivation remedy.  The parties also do not dispute that plaintiff did commence an Article 78 proceeding, but then withdrew it before it was resolved.  Plaintiff asserts, however, that "[t]here is quite clearly a glaring question of fact as to the circumstances of that withdrawal." (Pl.'s Opp'n at 11.)  According to plaintiff, it withdrew the Article 78 Proceeding "because of the [BZA's] denial [of its right] to be heard on a subdivision application."  (*Id.* (emphasis deleted).)

---

[8]      In the same vein, although plaintiff asserts that "the discovery in this case has borne out" its allegation that the Weis Document "'had been sent to numerous agencies in the town of Brookhaven,'" plaintiff fails to cite to any such evidence.  (*See* Pl.'s Opp'n at 11 n.9 (citing Am. Compl. ¶ 38).)

As support for this assertion, plaintiff relies on Iacobelli's deposition testimony that after Janlewicz requested that the BZA place plaintiff's application on hold, she requested it be reinstated to the calendar. (Iacobelli Dep. at 57-60.) Iacobelli testified that Janlewicz told him that the BZA had told her "that they are not going to put [plaintiff] back on the calendar unless I take care of the Article 78." (*Id.* at 68.) Iacobelli understood "tak[ing] care of the Article 78" to mean "[u]ntil any violations are taken care of." (*Id.*) He testified that he did not know what violations Janlewicz was referring to. (*Id.* at 69.) Finally, Iacobelli testified that he understood the phrase "taken care of" to mean "if I dropped the Article 78, [the BZA] would put me back on the calendar," but he admitted that no one had ever stated that to him directly. (*Id.*)

As an initial matter, Iacobelli's recounting of Janlewicz's out-of-court statements constitutes inadmissible hearsay, and plaintiff provides no explanation as to why the Court should find that such hearsay is sufficient to create any genuine issue of material fact. *See Manessis v. N.Y. City Dep't of Transp.*, 2003 WL 289969, at *14 (S.D.N.Y. Feb. 10, 2003) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)). Even if the Court were to consider the hearsay statement, it would be insufficient to create an issue of fact. Plaintiff has put forth no evidence that Iacobelli was ever told by anyone, whether employed by the BZA or otherwise, that the BZA would not put plaintiff's application back on the calendar until plaintiff withdrew the Article 78 Proceeding. Moreover, even though Janlewicz was deposed during the course of discovery, plaintiff has not supplied this Court with her deposition testimony (to the extent such testimony exists) regarding the purported conversation in which she was told that the BZA would not put plaintiff's application back on the calendar unless Iacobelli "[took] care of the Article 78." (*See* Iacobelli Dep. at 68.) In fact, the

only relevant portion of Janlewicz's deposition testimony supplied to the Court reflects her uncertainty as to whether she ever formally submitted a request that the matter be reinstated to the BZA's calendar. (*See* Janlewicz Dep. at 114-121.)

Accordingly, plaintiff's allegation that it was coerced into withdrawing the Article 78 Proceeding is not supported by admissible record evidence sufficient to create a genuine issue of material fact for the jury. Thus, the Court finds that the Article 78 Proceeding constituted a sufficiently meaningful post-deprivation remedy. Plaintiff's failure to avail itself of such a remedy forecloses its procedural due process claim. *See Rivera-Powell*, 470 F.3d at 466 (noting that if it were to determine that the government conduct was "random and unauthorized, . . . the existence of a meaningful post-deprivation remedy . . . would automatically satisfy procedural due process"). Thus, plaintiff's claims for monetary, injunctive and declaratory relief based upon defendants' alleged violations of its due process rights are dismissed. Plaintiff's claims for attorneys' fees, pursuant to 42 U.S.C. § 1988, are also dismissed.

## *CONCLUSION*

For the reasons set forth above, defendants' motion is granted and the Amended

Complaint is dismissed in its entirety.  The Clerk of the Court is respectfully directed to close

this case.

**SO ORDERED.**

Dated:   Central Islip, New York
         September 22, 2011

                                        /s/
                                        Denis R. Hurley
                                        United States District Judge